UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAUL JOSEPH WIELAND,<br>a Missouri resident, and<br><br>TERESA JANE WIELAND,<br>a Missouri resident,<br><br>       Plaintiffs,<br><br>vs.<br><br>UNITED STATES DEPARTMENT<br>OF HEALTH AND HUMAN SERVICES,<br><br>KATHLEEN SEBELIUS, in her official<br>capacity as the Secretary of the United<br>States Department of Health and Human<br>Services,<br><br>UNITED STATES DEPARTMENT OF<br>THE TREASURY,<br><br>JACOB J. LEW, in his official<br>capacity as the Secretary of the United<br>States Department of the Treasury,<br><br>UNITED STATES DEPARTMENT OF<br>LABOR, and<br><br>SETH D. HARRIS, in his official capacity<br>as Acting Secretary of the United States<br>Department of Labor,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiffs Paul Joseph Wieland and Teresa Jane Wieland, for their Complaint, state:

## NATURE OF THE ACTION

1.      This case challenges regulations issued under the Patient Protection and Affordable Care Act of 2010 ("Act") that force the Plaintiffs to either (a) violate their sincerely-held religious opposition to contraceptives, sterilization and abortifacients by paying to make such services available to their three daughters, (b) forfeit the valuable benefit of employer-sponsored health insurance for themselves and their daughters and purchase more expensive satisfactory coverage on the open market, if such coverage even exists, or (c) forgo health insurance for their daughters altogether.  The Act also unconstitutionally interferes with the Plaintiffs' parental rights and fundamental right to family integrity.

2.      Plaintiff Paul Joseph Wieland is a resident of Jefferson County, Missouri and member of the Missouri House of Representatives.

3.      Plaintiff Teresa Jane Wieland is a resident of Jefferson County, Missouri and is married to Paul Joseph Wieland.

4.      The Plaintiffs have three daughters, ages 12, 18 and 19.

5.      The Plaintiffs strive to raise their daughters according to Christian principles and corresponding sincerely held religious beliefs.  As part of these beliefs, the Plaintiffs oppose the use, funding, provision or support of contraceptives, sterilization and abortifacients.

6.      Health insurance coverage is a benefit of Mr. Wieland's employment with the State of Missouri and is provided through the Missouri Consolidated Health Care Plan ("MCHCP"), a corporate entity of the State of Missouri that was created by Missouri statute.

7.      Mr. and Mrs. Wieland pay a portion of their health care plan premiums in order to maintain coverage for themselves and their daughters.  Said premiums also partially fund medical services provided to other employees covered under the same plan.  The State of

2

Missouri contributes the remaining portion of the health care insurance premiums as a benefit of Mr. Wieland's employment.

8.     Between January 2011, when the Wielands' coverage under the plan began, and August 1, 2013, the plan did not include coverage for contraceptives, sterilization or abortifacients, because the Wielands had opted out of such coverage.  On July 18, 2013, MCHCP sent the Wielands a letter stating that because of federal law MCHCP must provide contraception and sterilization coverage in all medical plans it offers.  MCHCP stated that "[e]ffective August 1, 2013, you will be placed in the corresponding medical plan that includes contraception and sterilization coverage in accordance with federal law."

9.     Plaintiffs' premiums increased in conjunction with and because of the addition of contraception and sterilization coverage.

10.     The Plaintiffs do not believe that contraceptives, sterilization, or abortifacients constitute medicine, health care, or a means of providing for the well being of persons.  Rather, Plaintiffs believe contraceptives, sterilization, and abortifacients involve gravely immoral practices and that abortion in particular involves the intentional destruction of innocent human life.

11.     The Defendants have issued an administrative rule ("Mandate" or "Final Rule") pursuant to authority created by the Act requiring that group health plans cover, without cost sharing, "all Food and Drug Administration-approved contraceptive methods, sterilization procedures and patient education and counseling for all women with reproductive capacity." Such contraceptive methods include certain drugs and devices such as the "Plan B" and "ella" pills and copper IUDs, all of which are widely known as abortifacients in that they frequently function to destroy fertilized eggs, which Plaintiffs consider to be abortion.  This not only forces

3

the Plaintiffs to treat contraceptives, sterilization, abortifacients and related education and counseling as health care, but also subverts the expression of the Plaintiffs' religious beliefs by forcing them to fund, promote, and assist and participate in the provision of the acquisition of drugs and services which they believe involve gravely immoral practices, including the intentional destruction of innocent human life.

12.     The Mandate unconstitutionally forces the Plaintiffs to violate their sincerely-held religious beliefs under threat of having to forfeit the valuable job benefit of employer-sponsored insurance coverage or health coverage for themselves and their daughters.  The Mandate also forces the Plaintiffs to fund government-dictated speech that is directly at odds with their own speech and religious beliefs and practices.  The government forcing the Plaintiffs to pay money for the privilege of practicing their religion or controlling their own speech is un-American, unprecedented, and flagrantly unconstitutional.  The Mandate also unconstitutionally interferes with Plaintiffs' parental rights and fundamental right to family integrity.

13.     The Defendants' refusal to accommodate conscience is selective.  A patchwork of exemptions shows that Defendants do not believe every insurance plan in the country needs to cover these services.  For instance, Defendants have issued thousands of waivers from the Act (in its entirety) for many large corporations and labor unions, purely for reasons of commercial or political convenience.  Other exemptions have been awarded based on how old a plan is, or how large an employer is.  There are several other exemptions from the Act and from the Mandate, for a variety of groups and for a variety of reasons, including exemptions for certain religious employers.  There is, however, no way for individual employees to opt out of coverage based upon their sincerely-held religious beliefs regarding contraceptives, sterilization and abortifacients.

14.     Defendants acted with full knowledge of the beliefs of thousands of employers and the employees they insure, like the Plaintiffs, and because they arbitrarily exempt some plans for a wide range of reasons other than religious conviction, the Mandate can be interpreted as nothing other than the callous disregard of the religious beliefs and parental rights of the Plaintiffs.  The Plaintiffs accordingly seek refuge in this Court.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 1346(a)(2), and 1361.  This action arises under the Constitution and laws of the United States.  This Court has jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 2000bb-1.

16.     Venue lies in this district pursuant to 28 U.S.C. § 1391(e).

## THE PARTIES

17.     Plaintiff Paul Joseph Wieland is a resident of Jefferson County, Missouri and a member of the Missouri House of Representatives.

18.     Plaintiff Teresa Jane Wieland is a resident of Jefferson County, Missouri and has been married to Plaintiff Paul Joseph Wieland since November 28, 1992.

19.     Defendants are appointed officials of the United States government and United States governmental agencies responsible for issuing the Mandate.

20.     Defendant Kathleen Sebelius is the Secretary of the United States Department of Health and Human Services ("HHS").  In this capacity, she has responsibility for the operation and management of HHS.  Sebelius is sued in her official capacity only.

21.     Defendant HHS is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the Mandate.

22.     Defendant Seth D. Harris is the Acting Secretary of the United States Department of Labor.  In this capacity, he has responsibility for the operation and management of the Department of Labor.  Harris is sued in his official capacity only.

23.     Defendant Department of Labor is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the Mandate.

24.     Defendant Jacob J. Lew is the Secretary of the Department of the Treasury.  In this capacity, he has responsibility for the operation and management of the Department.  Lew is sued in his official capacity only.

25.     Defendant Department of Treasury is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the Mandate.

## FACTUAL ALLEGATIONS

I.    **Plaintiffs' Religious Beliefs and Practices Related to Abortion, Sterilization and Contraceptives, and Their Health Insurance Plan**

26.     The Plaintiffs, along with their children, are life-long Roman Catholics.  Plaintiff Paul Joseph Wieland is a Fourth Degree member of the Knights of Columbus.

27.     The Plaintiffs have three daughters, ages 12, 18 and 19.

28.     The Plaintiffs strive to raise their family according to Christian principles and corresponding sincerely-held religious beliefs.  As part of these sincerely-held beliefs, the Plaintiffs believe that contraception and sterilization are to be avoided, and that human life begins at conception and that from that point on it is sacred and worthy of protection.  Plaintiffs thus oppose the use, funding, provision or support of contraceptives, sterilization and abortifacients.

6

29.     The Plaintiffs seek to defend and promote certain moral and ethical standards in their family, including promoting a belief in the sanctity and quality of life which precludes the use of contraceptives, sterilization, and abortion on demand through abortifacient drugs and devices or otherwise.

30.     Plaintiffs are committed to ensuring the well being and health of their children.  In furtherance of these commitments, the Plaintiffs ensure that their daughters have comprehensive medical coverage.

31.     Health insurance coverage is a benefit of Mr. Wieland's employment with the State of Missouri and is provided through the Missouri Consolidated Health Care Plan, a corporate entity of the State of Missouri that was created by Missouri statute.

32.     Mr. and Mrs. Wieland pay a portion of the premiums as required in order to maintain coverage for themselves and their daughters.  Said premiums also partially fund medical services provided to other employees covered under the same plan.  The State of Missouri contributes the remaining portion of the insurance premiums as a benefit of Mr. Wieland's employment.

33.     Because of the Mandate, discussed above and in more detail below, MCHCP now states that Mr. Wieland's insurance plan must provide coverage for contraception, sterilization and abortifacients.

34.     The Plaintiffs oppose the use, funding, provision or support of contraception, sterilization and abortifacients as a matter of sincerely-held religious belief and practice.

35.     The Plaintiffs cannot provide, fund or in any way be a participant in the provision of health care coverage for contraception, sterilization, abortions or abortifacient drugs and

devices, such as Plan B, ella, and copper IUDs, or related education and counseling, without violating their sincerely-held religious beliefs.

36.    The Plaintiffs cannot provide, fund or in any way be a participant in the provision of information or guidance to others, including their daughters, about locations at which they can access contraceptives, sterilization or abortifacients, or related education and counseling, without violating their deeply and sincerely-held religious beliefs.

37.    The Plaintiffs do not believe that contraceptives, sterilization or abortifacients constitute medicine, health care, or a means of providing for the well being of persons.  The Plaintiffs believe abortion involves gravely immoral practices and the intentional destruction of innocent human life.

38.    The Plaintiffs believe that forcing them to provide insurance coverage to their daughters for contraceptives, sterilization and abortifacients and related counseling is a governmental interference with their parental rights and fundamental right to their family's integrity.

39.    The Plaintiffs cannot obtain insurance coverage other than through Mr. Wieland's employee plan without incurring significantly more expense.  The Plaintiffs, upon information and belief, cannot obtain insurance coverage without coverage for contraceptives, sterilization or abortifacients from any source.

## II.    The Affordable Care Act

40.    In March 2010, Congress passed and President Obama signed into law the Patient Protection and Affordable Care Act, Pub. L. 111-148 (March 23, 2010), and the Health Care and Education Reconciliation Act, Pub. L. 111-152 (March 30, 2010), collectively known as the "Affordable Care Act."

41.     The Act regulates the national health insurance market by directly regulating "group health plans" and "health insurance issuers."

42.     The Act does not apply equally to all insurers, employers or individuals.

43.     The Act does not apply its fine and penalty provisions for failure to offer employer-sponsored insurance to employers with fewer than 50 employees, not counting seasonal workers.  26 U.S.C. § 4980H(c)(2)(A).

44.     The Act is not generally applicable because it provides for numerous exemptions from its rules.

45.     The Act's preventive care requirements do not apply to employers who provide so-called "grandfathered" health care plans.  The Plaintiffs' health insurance plan does not qualify as a grandfathered health plan.  *See* 42 U.S.C. § 18011(a)(2); 26 C.F.R. § 54.9815-1251T; 29 C.F.R. § 2590.715-1251; 45 C.F.R. § 147.140.

46.     Employers who follow HHS guidelines may continue to use grandfathered plans indefinitely.

47.     HHS has predicted that a majority of large employers, employing more than 50 million Americans, will continue to use grandfathered plans through at least 2014, and that a third of small employers with between 50 and 100 employees may do likewise.  *See* Keeping the Health Plan You Have: The Affordable Care Act and "Grandfathered" Health Plans, available at http://www.healthcare.gov/news/factsheets/2010/06/keeping-the-health-plan-you-have-grandfathered.html (last visited May 27, 2013).  According to government estimates, a total of 191 million Americans belong to plans that may be grandfathered under the Act.  Interim Final Rules for Group Health Plans and Health Insurance Coverage Relating to Status as a

Grandfathered Health Plan Under the Patient Protection and Affordable Care Act, 75 Fed. Reg. 34538, 34540 (June 17, 2010).

48.     In addition to grandfathering under the Act, the preventive care guidelines exempt certain religious employers from any requirement to cover contraceptive services.

49.     The Act is not neutral because some groups, both secular and religious, enjoy exemptions from the law, while certain religious groups do not.

50.     Certain provisions of the Act do not apply equally to members of certain religious groups or organizations.

51.     None of the several exemptions from the law applies to individuals, like the Plaintiffs, who object to providing their daughters with contraceptive, sterilization or abortifacient coverage.

52.     The Department of Health and Human Services has the authority under the Act to grant compliance waivers ("HHS waivers") to employers and other health insurance plan issuers. HHS waivers release employers and other plan issuers from complying with the provisions of the Act.  HHS decides whether to grant waivers based on individualized waiver requests from particular employers and other health insurance plan issuers.  Upon information and belief, more than a thousand HHS waivers have been granted.  The Act is not neutral because some religious groups have received HHS waivers while other religious groups have not.

53.     The Act is not generally applicable because Defendants have granted numerous waivers from complying with the Act's requirements.

54.     The Act is not generally applicable because it does not apply equally to all individuals and plan issuers.

55.     Defendants' waiver practices create a system of individualized assessments to qualify for an exemption.

56.     Beginning in 2014, individuals who do not have health insurance will have to pay a penalty.

**III.     The Preventive Care Mandate**

57.     The Affordable Care Act mandates that health plans "provide coverage for and shall not impose any cost sharing requirements for[,] . . . with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration," and directs the Secretary of HHS to determine what would constitute "preventive care" under the mandate.  42 U.S.C. § 300gg—l3(a)(4).

58.     On July 19, 2010, HHS, along with the Department of Treasury and the Department of Labor, published an interim final rule under the Act.  75 Fed. Reg. 41726 (2010). The interim final rule requires providers of group health insurance to cover preventive care for women as provided in guidelines to be published by the Health Resources and Services Administration at a later date.  75 Fed. Reg. 41759 (2010).

59.     A number of groups filed comments warning of the potential conscience implications of requiring religious individuals and groups to pay for certain kinds of "health care," including abortion on demand and abortifacients.

60.     HHS directed an independent, non-profit private health policy organization, the Institute of Medicine ("IOM"), to suggest a list of recommended guidelines describing which drugs, procedures, and services should be covered by all health plans as preventive care for women.  *See* Women's Preventive Services: Required Health Plan Coverage Guidelines, http://www.hrsa.gov/womensguidelines (last visited August 13, 2013).

61.     In developing its guidelines, IOM invited a select number of groups to make

presentations on the preventive care that should be mandated by all health plans.  These were the

Guttmacher Institute, the American Congress of Obstetricians and Gynecologists, John Santelli,

the National Women's Law Center, National Women's Health Network, Planned Parenthood

Federation of America, and Sara Rosenbaum.

62.     No religious groups or other groups that oppose government-mandated coverage

of abortion and related education and counseling were among the invited presenters.

63.     One year after the first interim final rule was published, on July 19, 2011, the

IOM published its recommendations.  It recommended that the preventive services include "All

Food and Drug Administration approved contraceptive methods [and] sterilization procedures."

Institute of Medicine, Clinical Preventive Services for Women: Closing the Gaps (July 19,

2011).

64.     FDA-approved "contraceptive" methods include birth-control pills; prescription

contraceptive devices, including IUDs; Plan B, also known as the "morning-after pill"; ulipristal,

also known as "ella" or the "week-after pill"; and other drugs, devices, and procedures.  *See*

FDA Birth Control Guide, available at http://www.fda.gov/downloads/

ForConsumers/ByAudience/ForWomen/FreePublications/UCM282014.pdf (last visited May

27, 2013).

65.     Thirteen days later, on August 1, 2011, without notice of rulemaking or

opportunity for public comment, HHS, the Department of Labor, and the Department of

Treasury adopted the IOM recommendations in full and promulgated an interim final rule (the

Mandate), which requires that all "group health plan[s] and . . . health insurance issuer[s]

offering group or individual health insurance coverage" provide all FDA-approved

12

contraceptive methods and sterilization procedures. 76 Fed. Reg. 46621 (published Aug. 3, 2011); 45 C.F.R. § 147.130.  On the same day the Health Services and Resources Administration ("HRSA") issued guidelines adopting the IOM recommendations.  *See* Women's Preventive Services: Required Health Plan Coverage Guidelines, http://www.hrsa.gov/womensguidelines (last visited May 27, 2013).

66.     The Mandate also requires group health care plans and issuers to provide education and counseling, including on the subject of abortifacients, for all women beneficiaries with reproductive capacity.

67.     The Mandate went into effect immediately as an "interim final rule."

68.     HHS did not adequately accommodate the concerns of religious organizations or individuals in the comments submitted before the Mandate was issued.  The Mandate was unresponsive to the concerns stated in the comments submitted by religious organizations.

69.     When it issued the Mandate, HHS requested comments from the public by September 30, 2011, and indicated that comments would be available online.  Upon information and belief, over 100,000 comments were submitted against the Mandate.

70.     On October 5, 2011, six days after the comment period ended, Defendant Sebelius gave a speech at a fundraiser for NARAL (National Abortion Rights Action League) Pro-Choice America.  She told the assembled crowd that "we are in a war."

71.     Certain entities, such as qualifying religious organizations and nonprofits, are exempted from compliance with the Mandate; however, the Mandate fails to take into account the statutory and constitutional rights, including religious and parental rights, as well as fundamental family integrity rights of individuals like the Plaintiffs.

72.     The Mandate forces the Plaintiffs to provide coverage for or otherwise

participate in the provision of contraceptives, sterilization, abortifacients and related education and counseling against Plaintiffs' religiously informed consciences.

73.     The Mandate constitutes government-imposed pressure and coercion on the Plaintiffs to change or violate their religious beliefs and practices.

74.     The Mandate jeopardizes the Plaintiffs' and their daughters' access to affordable health insurance because of the Plaintiffs' profound desire not to change or violate their religious beliefs and practices.

75.     The Mandate forces the Plaintiffs to provide, fund or participate in the provision of contraceptives, sterilization, abortifacients and related education and counseling in violation of their sincerely held religious beliefs, conduct which is equivalent to assisting another to intentionally destroy innocent human life.

76.     The Mandate forces the Plaintiffs to provide, fund or participate in the provision of contraceptives and abortifacients to their daughters free of charge in direct conflict with the Plaintiffs' religious beliefs and practices.

77.     The Mandate forces the Plaintiffs to fund or to otherwise participate in the provision of education and counseling concerning contraceptives and abortion that directly conflict with the Plaintiffs' religious beliefs and practices.

78.     The Plaintiffs cannot terminate their daughters' health insurance coverage without violating their religious duty to provide for the health and well being of their children.

79.     The Mandate forces the Plaintiffs to choose among violating their religious beliefs, forfeiting valuable job benefits and therefore being penalized for their beliefs, or terminating their daughters' health care plans altogether.

80.     Providing counseling and education about abortion directly undermines and

subverts the explicit messages and speech of the Plaintiffs.  Being compelled to provide such

counseling and education constitutes compelled speech, in violation of the First Amendment.

Being compelled to refer to abortifacients as "preventive care" also constitutes compelled

speech in violation of the First Amendment.

**IV.  Mo. Rev. Stat. § 191.724 Protects Plaintiffs' Rights.**

81.     Mo. Rev. Stat. § 191.724, in relevant part, states as follows:

2. No employee, self-employed person, or any other person shall be compelled to obtain
coverage for, or be discriminated against or penalized for declining or refusing coverage
for, abortion, contraception, or sterilization in a health plan if such items or procedures are
contrary to the religious beliefs or moral convictions of such employee or person.

3. No employer, health plan provider, health plan sponsor, health care provider, or any other
person or entity shall be compelled to provide coverage for, or be discriminated against or
penalized for declining or refusing coverage for, abortion, contraception, or sterilization in a
health plan if such items or procedures are contrary to the religious beliefs or moral
convictions of such employer, health plan provider, health plan sponsor, health care provider,
person, or entity.

4. No governmental entity, public official, or entity acting in a governmental capacity shall
discriminate against or penalize an employee, self-employed person, employer, health plan
provider, health plan sponsor, health care provider, or any other person or entity because of
such employee's, self-employed person's, employer's, health plan provider's, health plan
sponsor's, health care provider's, or other person's or entity's unwillingness, based on
religious beliefs or moral convictions, to obtain or provide coverage for, pay for,
participate in, or refer for, abortion, contraception, or sterilization in a health plan.

82.     Section 191.724 protects the Plaintiffs' constitutional religious, parental, and

fundamental family integrity rights.  However, Mr. Wieland's insurer, the state-created

Missouri Consolidated Health Care Plan, will not provide the Plaintiffs with a health plan that

excludes contraceptive coverage, even despite Section 191.724.  MCHCP cites the Mandate

as controlling.

83.     The Plaintiffs believe the Mandate is unconstitutional as applied to them and

that they should be able to use and depend upon the guarantees of Section 191.724.

84.     An actual, justiciable controversy currently exists between Plaintiffs and Defendants.  Absent a declaration resolving this controversy and the validity of the Mandate, as applied, Plaintiffs are uncertain as to their legal rights and duties regarding their health insurance plans and regarding the health care of their daughters.

85.     Absent injunctive and declaratory relief against the Mandate, the Plaintiffs will endure irreparable harm that outweighs any harm to the Defendants.

86.     The Plaintiffs are likely to succeed on the merits of their claims.

87.     An injunction, as sought by the Plaintiffs, would not adversely affect the public interest.

## CAUSES OF ACTION

### COUNT I
### Violation of the Religious Freedom Restoration Act

88.     The Plaintiffs incorporate by reference all preceding paragraphs.

89.     The Plaintiffs' sincerely-held religious beliefs prohibit them from providing, funding or participating in the provision of coverage for contraceptives, sterilization or abortifacients, or related education and counseling.  The Plaintiffs' compliance with these beliefs is a religious exercise.

90.     The Mandate creates government-imposed coercive pressure on the Plaintiffs to change or violate their religious beliefs and practices.

91.     If the Plaintiffs do not change or violate their religious beliefs and practices, they will have to forfeit their valuable right to employee health insurance or not insure their daughters at all.

92.     The Plaintiffs, upon information and belief, cannot obtain insurance coverage without coverage for contraceptives, sterilization or abortifacients from any source.  If they were

16

to find such coverage, it would come at a greater cost than through Mr. Wieland's employee plan.

93.     The Mandate imposes a substantial burden on the Plaintiffs' religious exercise, as to both belief and practice.

94.     The Government has no compelling governmental interest to require Plaintiffs to comply with the Mandate.

95.     The Mandate is not narrowly tailored to achieve any compelling governmental interest in a way that is least restrictive to Plaintiffs' rights.

96.     The Mandate and Defendants' threatened enforcement of the Mandate violate the Plaintiffs' rights secured to them by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq.

97.     Absent injunctive and declaratory relief against the Defendants, the Plaintiffs have been and will continue to be harmed.

**COUNT II**
**Violation of the First Amendment to the United States Constitution**
**Free Exercise Clause**

98.     The Plaintiffs incorporate by reference all preceding paragraphs.

99.     The Plaintiffs' sincerely-held religious beliefs prohibit them from providing, funding or participating in the provision of coverage for contraceptives, abortion or abortifacients, or related education and counseling.  The Plaintiffs' compliance with these beliefs is a religious exercise.

100.    Neither the Affordable Care Act nor the Mandate is neutral.

101.    Neither the Affordable Care Act nor the Mandate is generally applicable.

17

102.     Defendants have created categorical exemptions and individualized assessment exemptions to the Mandate.

103.     The Mandate furthers no compelling governmental interest.

104.     The Mandate is not narrowly tailored to be the least restrictive means of furthering Defendants' stated interests.

105.     The Mandate creates government-imposed coercive pressure on the Plaintiffs to change or violate their religious beliefs and practices.

106.     The Mandate chills the Plaintiffs' religious exercise.

107.     If the Plaintiffs do not change or violate their religious beliefs and practices, they will have to forfeit their valuable right to employee health insurance or not insure their daughters at all.

108.     The Plaintiffs, upon information and belief, cannot obtain insurance coverage without coverage for contraceptives, sterilization or abortifacients from any source.  If they were to find such coverage, it would come at a greater cost than through Mr. Wieland's employee plan.

109.     The Mandate imposes a substantial burden on the Plaintiffs' religious exercise, as to both belief and practice.

110.     The Mandate is not narrowly tailored to achieve any compelling governmental interest.

111.     Despite being informed in detail of the fact that millions of Americans had beliefs similar to those of the Plaintiffs, Defendants designed the Mandate and the religious exemption to the Mandate in a way that made it impossible for the Plaintiffs to comply with their religious beliefs.

112.    Defendants promulgated both the Mandate and the religious exemption to the Mandate in order to suppress the religious exercise of the Plaintiffs and others.

113.    The Mandate and Defendants' threatened enforcement of the Mandate violate the Plaintiffs' rights secured to them by the Free Exercise Clause of the First Amendment to the United States Constitution.

114.    Absent injunctive and declaratory relief against the Mandate, the Plaintiffs have been and will continue to be harmed.

## COUNT III
### Violation of the Fifth Amendment to the United States Constitution
### Parental Rights/Family Integrity Rights

115.    The Plaintiffs incorporate by reference all preceding paragraphs.

116.    The Plaintiffs strive to raise their family according to Christian principles, Roman Catholic teachings and corresponding sincerely-held religious beliefs.  As part of these beliefs, the Plaintiffs oppose the use, funding, provision or support of contraceptives, sterilization and abortifacients.

117.    The Mandate is an unconstitutional government interference with the Plaintiffs' fundamental rights to direct the upbringing and education of their children and to make decisions concerning the care, custody, control, management and nurture of their children.

118.    The Mandate is not narrowly tailored to achieve any compelling governmental interest in a way that is least restrictive to Plaintiffs' rights.

## COUNT IV
### Violation of the First Amendment to the United States Constitution
### Freedom of Speech
### *Compelled Speech*

119.    The Plaintiffs incorporate by reference all preceding paragraphs.

19

120.    The Plaintiffs teach that contraceptives, sterilization and abortifacients violate their religious beliefs.

121.    The Mandate would compel the Plaintiffs to subsidize and participate in activities that they teach are violations of their religious beliefs.

122.    The Mandate would compel the Plaintiffs to provide, fund or participate in the provision of contraceptives, abortifacients and education and counseling related to abortion.

123.    Expenditures are a form of speech protected by the First Amendment.

124.    Defendants' actions thus violate the Plaintiffs' rights to be free from compelled speech as secured to them by the First Amendment of the United States Constitution.

125.    The Mandate's compelled speech requirement is not narrowly tailored to achieve a compelling governmental interest in a way least restrictive to Plaintiffs' rights.

126.    Absent injunctive and declaratory relief against the Mandate, the Plaintiffs have been and will continue to be harmed.

## COUNT V
### Violation of the Administrative Procedure Act

127.    The Plaintiffs incorporate by reference all preceding paragraphs.

128.    The Mandate is contrary to § 1303(b)(1)(A) of the Affordable Care Act, which provides that "nothing in this title" . . . "shall be construed to require a qualified health plan to provide coverage of [abortion] services . . . as part of its essential health benefits for any plan year."  The Act also leaves it to "the issuer of a qualified health plan," not the Government, "[to] determine whether or not the plan provides coverage of [abortion]."  42 U.S.C. § 18023(b)(1)(A)(ii).

129.    The Defendants, in promulgating the Mandate, failed to consider the constitutional and statutory implications of the Mandate on individuals like the Plaintiffs.

130.    The Mandate is contrary to existing law and is in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2).

131.    Absent injunctive and declaratory relief against the Mandate, the Plaintiffs have been and will continue to be harmed.

**PRAYER FOR RELIEF**

Wherefore, these Plaintiffs request that the Court:

a.    Declare that the Mandate and Defendants' enforcement of the Mandate against these Plaintiffs violate the Religious Freedom Restoration Act;

b.    Declare that the Mandate and Defendants' enforcement of the Mandate against these Plaintiffs violate the First Amendment to the United States Constitution;

c.    Declare that the Mandate and Defendants' enforcement of the Mandate against these Plaintiffs violate the Fifth Amendment to the United States Constitution;

d.    Declare that the Mandate and Defendants' enforcement of the Mandate against these Plaintiffs violate the Administrative Procedure Act;

e.    Issue an order prohibiting Defendants from enforcing the Mandate against these Plaintiffs insofar as it forces them to provide, fund or participate in the provision of contraceptives, sterilization, abortions or abortifacients, or related education and counseling;

f.    Award these Plaintiffs the costs of this action and reasonable attorney's and expert's fees pursuant to 42 U.S.C. § 1988 or as otherwise provided by law; and

g.    Award such other and further relief as it deems just and necessary.

OTTSEN, LEGGAT AND BELZ, L.C.


By:  /s/ Timothy Belz
     Timothy Belz  #MO-31808
     J. Matthew Belz #MO-61088
     112 South Hanley, Suite 200
     St. Louis, Missouri 63105-3418
     Phone: (314) 726-2800
     Facsimile: (314) 863-3821
     tbelz@omlblaw.com

     and

     Peter Breen*
     THOMAS MORE SOCIETY
     29 S. La Salle Street Suite 440
     Chicago, IL 60603
     Phone: (312) 782-1680
     Facsimile: (312) 782-1887

     * *Pro hac vice* motion pending

     Attorneys for Plaintiffs