# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| **PAUL JOSEPH WIELAND, and** ) | |
| **TERESA JANE WIELAND,** ) | |
| ) | |
|   **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 4:13CV1577JCH** |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **HEALTH AND HUMAN SERVICES, et al.,** ) | |
| ) | |
|   **Defendants.** ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the Motion to Dismiss filed by Defendants United States Department of Health and Human Services, Kathleen Sebelius, in her official capacity as the Secretary of the United States Department of Health and Human Services, United States Department of the Treasury, Jacob J. Lew, in his official capacity as Secretary of the United States Department of the Treasury, United States Department of Labor, and Thomas E. Perez, in his official capacity as Acting Secretary of the United States Department of Labor (jointly, Defendants).  (ECF No. 22).  Also before the court is the Motion for Temporary Restraining Order (TRO) filed by Plaintiffs Paul Joseph Wieland and Teresa Jane Wieland.  (ECF No. 2).  The motions are fully briefed and ready for disposition.

## BACKGROUND

Plaintiffs brought this action to challenge regulations issued under the Patient Protection and Affordable Care Act, Pub. L. 111-148 (Mar. 23, 2010), and the Health Care and Education Reconciliation Act, Pub. L. 111-152 (Mar. 30, 2010), collectively known as the Affordable Care Act

(the Act),[1] which regulations they claim force them to either (1) violate their religious opposition to contraception, sterilization, and abortifacients by paying to make such services available to their daughters, (2) forfeit the benefit of employer-sponsored health insurance for themselves and their daughters and purchase more expensive coverage, if such coverage exists, or (3) forgo health insurance for themselves and their daughters altogether.  (ECF No. 1 ¶¶ 1, 40-41, 57-58).

As relevant, Plaintiffs specifically allege the following.  As part of their religious principles and beliefs, they oppose the use, funding, provision, or support of contraceptives, sterilization and abortifacients.  A benefit of Mr. Wieland's employment with the State of Missouri is health insurance, provided through the Missouri Consolidated Health Care Plan (MCHCP), a corporate entity of the State.  Plaintiffs pay a portion of their health care plan premiums in order to maintain coverage for themselves and their daughters.  Their premiums also partially fund medical services provided to other employees covered under MCHCP.  Prior to August 1, 2013, Plaintiffs' coverage under MCHCP did not cover contraception, sterilization, or abortifacients.  In July 2013, MCHCP

---

[1]The Patient Protection and Affordable Care Act, 2 U.S.C. § 300gg-13, provides:

(a) In general

A group health plan and a health insurance issuer offering group or individual health insurance coverage shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for–

. . .

(4) with respect to women, such additional preventive care and screenings not described in paragraph (1) as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph.

notified Plaintiffs that because of federal law it must provide contraception and sterilization coverage in all its medical plans and that, effective August 1, 2013, Plaintiffs would be placed in the "corresponding medical plan that includes contraception and sterilization coverage in accordance with federal law."   As a result of this additional coverage Plaintiffs' premiums have increased. (ECF No. 1 ¶¶ 1-9).

Plaintiffs further allege that Defendants issued a Mandate pursuant to the Act requiring that group health plans cover, without cost sharing, "all Good and Drug Administration-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity."[2]   Such contraceptive methods include abortifacients in that they frequently function to destroy fertilized eggs, which Plaintiffs consider abortion.  Plaintiffs allege this forces them to treat contraceptives, sterilization, abortifacients, and related education and counseling as health care and "subverts" Plaintiffs' religious beliefs; the Mandate unconstitutionally forces them to violate their sincerely-held religious beliefs under threat of having to forfeit the job benefit of employer sponsored  health insurance coverage for themselves and their daughters; the Mandate forces them to fund government dictated speech which is directly at odds with their speech and religious beliefs and practices; and the Mandate unconstitutionally interferes with their parental rights and fundamental right to family integrity.  (ECF No. 1 ¶¶ 11-14).

─────────────────

[2]As stated by 77 Fed. Reg. 8725 (Feb. 15, 2012), the Act "requires that non-grandfathered group health plans and health insurance issuers offering group or individual health insurance coverage provide benefits for certain preventive health services without the imposition of cost sharing."  Health Resources and Services Administration (HRSA) Guidelines provide that these preventive health services include, "without cost sharing, [a]ll Food and Drug Administration [FDA] approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity."  Also, according to Defendants, HRSA provides the list of women's preventative services required by the Act, § 300gg-13 at http://www.hrsa.gov/womensguidelines/.

3

Plaintiffs allege that Defendants' conduct violates of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq. (Count 1), the Free Exercise Clause of the First Amendment of the United States Constitution (Count 2), their Parental Rights/Family Integrity Rights under the Fifth Amendment to the United States Constitution (Count 3), their Freedom of Speech under the First Amendment of the United States Constitution (Count 4), and the Administrative Procedure Act, 5 U.S.C. § 706(2) (Count 5).  Plaintiffs seek declaratory and injunctive relief with the object of prohibiting Defendants from enforcing the Mandate.  (ECF No. 1 ¶¶ 88-131).  Additionally, Plaintiffs filed a Motion for Temporary Restraining Order enjoining Defendants from enforcing the Mandate.  (ECF No. 2).

Defendants have moved to dismiss Plaintiffs' Complaint based on Plaintiffs' lack of standing.  Additionally, Defendants seek dismissal of the Complaint based on Plaintiffs' failure to state claims upon which relief can be granted and dismissal of Plaintiffs' Motion for Temporary Restraining Order.  (ECF Nos. 21, 22).

## STANDARD

Standing is a is a jurisdictional issue and, therefore, motions to dismiss for lack of standing are subject to Fed. R. Civ. P. 12(b)(1) (dismissal for lack of subject-matter jurisdiction).  See A.J. ex rel. Dixon v. UNUM, 696 F.3d 788, 789 (8th Cir. 2012) (per curiam).  "Standing is 'the threshold question in every federal case,'" and, in ruling on a motion to dismiss for lack of subject matter jurisdiction, this Court must view the allegations in the Complaint in the light most favorable to Plaintiffs.  Tarsney v. O'Keefe, 225 F.3d 929, 934 (8th Cir. 2000).  Because standing is determined as of the lawsuit's commencement, the facts are considered as they existed at that time.  See Dixon, 696 F.3d at 789.

4

To establish standing, Plaintiffs must sufficiently allege, as a threshold matter, that they "personally [have] suffered some actual or threatened injury as a result of the putatively illegal conduct" of Defendants.  See Tarsney, 225 F.3d at 934.  If Plaintiffs have not suffered an injury, they do not have standing and the Court is without jurisdiction to consider their action.  See id.  Plaintiffs bear the burden of showing (1) they have suffered an "injury in fact" - an invasion of a legally protected concrete and particularized interest; (2) there is a causal connection between their injury and the conduct of which they complain; the injury cannot be the result of "the independent action of some third party not before the court"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

To obtain a temporary restraining order Plaintiffs must show that they are likely to succeed on the merits and likely to suffer irreparable harm in the absence of preliminary relief, and an injunction is in the public interest.  See Winter v. Natural Res. Def. Council, 555 U.S. 7, 22 (2008). The party seeking injunctive relief bears the "complete burden" of proving an injunction should be granted.  See Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir.1987).

## DISCUSSION

Defendants argue that Plaintiffs have not made a threshold showing that their injury was caused by the regulations they challenge - the Mandate, or that their injury is likely to be redressed by the relief which Plaintiffs seek - an injunction, because the relief is inextricably linked to independent discretionary actions of third parties who are not before the Court - Mr. Wieland's employer, the State, and MCHCP.  (ECF Nos. 22, 31).

First, the Court will consider whether Plaintiffs sufficiently allege facts, which if true, would show a causal connection between their injuries and the conduct of which they complain.  Because

Plaintiffs' alleged injuries are linked with the independent discretionary actions of the State and MCHCP, neither of which are parties to this action or before this Court, they allege only indirect causation between the Mandate and their alleged injuries.  See Lujan, 504 U.S. at 562 (finding no standing where causal connection "depends on the unfettered choices made by independent actors not before the courts.") (internal quotations and citations omitted).  Plaintiffs' standing, however, is not precluded simply because they are not the object of the regulations to which they object.  See id. (when plaintiff's injury arises from government's "allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed" than when plaintiff himself is object of government's action).  Plaintiffs retain the burden to show that the choices of the third parties "have been or will be made in such manner as to produce causation and permit redressability of [their] injury."  Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 938 (D.C. Cir. 2004).  To meet their burden, Plaintiffs must show more than "unadorned speculation"; they must demonstrate that their achieving the requested change in government policy will alter the behavior of third parties so as to redress their alleged injuries.  Id. at 938, 940, 944 (internal quotations and citations omitted).

In cases such as the matter under consideration which challenge government action based on third-party conduct, courts may find standing "where the record presents substantial evidence that would "leav[e] little doubt as to causation and the likelihood of redress" or where a plaintiff challenges "governmental action which permits or authorizes third-party conduct that would otherwise be illegal in the absence of the Government's action."  Id. at 940. Nonetheless, the causation and redressability requirements must be satisfied.  See id. at 940-41.

In support of their argument that they have sufficiently alleged causal connection for purposes of establishing standing, Plaintiffs rely on a letter to Mr. Wieland from MCHCP stating that initially, for 2013, Mr. Wieland was placed in a medical plan without contraception and sterilization coverage

6

because of his religious beliefs, but due to "a recent federal court ruling" requiring MCHCP to provide such coverage in all medical plans, effective August 2013, he would be placed in a plan which included contraception and sterilization coverage.  (ECF No. 28 at 4 and Ex. 1).  Plaintiffs also rely on minutes from a MCHCP board meeting reflecting that the changes in MCHCP plans to which Plaintiffs object were necessary in light a court decision.  (ECF No. 28 at 5-6).  To the extent Plaintiffs suggest the letter and the MCHCP Board minutes sufficiently demonstrate causation for purposes of standing, the Court finds to the contrary; the letter and minutes support Defendants' assertion that the injuries of which Plaintiffs complain are linked with the independent discretionary actions of third parties not before the court.  See Renal Physicians Ass'n v. U.S. Dep't of Health and Human Servs., 489 F.3d 1267, 1275, 1277 (D.C. Cir. 2007) (where actions of third party at issue, at pleading stage "bald assertions" are insufficient and plaintiff must allege facts "sufficient to demonstrate to demonstrate a substantial likelihood that the third party directly injuring the plaintiff would cease doing so as a result of the relief the plaintiff sought"; affidavit referring "vaguely" to new federal law and claiming injury and causation were insufficient to establish causation).  Further, Mr. Wieland's affidavit provided in support of Plaintiffs' motion for a TRO and referenced in Plaintiffs' Response to the Motion to Dismiss merely restates and rephrases the allegations of the Complaint and Plaintiffs arguments made in resistance to the Motion to Dismiss and baldly asserts that Plaintiffs' injuries "can clearly be traced" to Defendants' challenged action.  The Court finds that these attestations are insufficient for purposes of establishing causation.  (ECF Nos. 4.1, 28 at 3).  See Renal Physicians, 489 F.3d at 1275, 1277.

Plaintiffs suggest that the district court's decision Missouri Insurance Coalition v. Huff, 2013 WL 2250430 (E.D. Mo. May 22, 2013), establishes causation.  (ECF No. 28 at 5).  The Huff plaintiffs, which included health insurers, sought declaratory judgment that Mo. Rev. Stat. §

376.1199 was void under the Supremacy Clause of the United States Constitution because the State law was in direct conflict with the "contraceptive mandate" of the Act.   Mo. Rev. Stat. § 376.1199 required health benefit plans that provide pharmaceutical benefits provide coverage for contraceptives subject to the same payment requirements as other drugs.  Subsection 4 of that statute, however, included an "opt out" provision, which required Missouri health insurers to honor requests by employers to issue policies excluding coverage for contraceptives if "the use or provision of such contraceptives [was] contrary to the [employer's] moral, ethical or religious beliefs or tenets." Mo. Rev. Stat. § 376.1199.4(1).    Similarly, individual enrollees in a health plan that provided contraceptive coverage could opt-out of that coverage, and health insurers that had their own moral, ethical, or religious tenets contrary to the use or provision of contraceptives were themselves exempt from subsection 1(4).  Id. § 376.1199.4(2)-(3).

The court in Huff found that the "opt-out" provision of subsection 4 was preempted by the Supremacy Clause of the United States Constitution, even if State law provided more coverage without the cost sharing mandated by federal law.  See Huff, 2013 WL 225043, at *2.  Plaintiffs' reliance on Huff to establish both the causation and redressability requirements for standing is misguided; unlike the plaintiffs in Huff, Plaintiffs are not health care insurers, and cannot draw a direct line of causation from the challenged regulations to their own alleged injury.  See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976) ("[T]he 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court").  The Court finds, therefore, viewing the facts in a light most favorable to Plaintiffs, that Plaintiffs have failed to allege facts which if true would establish the causal connection element of standing.  See Lujan, 504 U.S. at 560; Tarsney, 225 F.3d at 934.

Second, the Court will consider whether Plaintiffs sufficiently allege facts which, if true, would show that their injuries are likely to be redressed by the remedy they seek.  For purposes of withstanding Defendants' Motion to Dismiss, Plaintiffs must sufficiently allege facts to suggest the likelihood of their achieving redress is more than speculative.  Cf. Allen v. Wright, 468 U.S. 737, 758-59 (1984) (speculative whether change in tax exemption for private schools would lead to change in school policies); Simon, 426 U.S. at 42-43 (speculative whether change in tax rules governing nonprofit hospitals would improve services for indigents).

Plaintiffs argue that an injunction would provide them with the relief they seek; in the event the Court issues an injunction, the State and MCHCP would offer a health plan which does not include the coverage which Plaintiffs find objectionable.  The Court finds Plaintiffs' assertion speculative.  See Lujan, 504 U.S. at 562; Warth, 422 U.S. at 504.  As argued by Defendants, were this Court to issue an injunction prohibiting Defendants from implementing the Mandate, the State and MCHCP would retain discretion not to offer Mr. Wieland a health plan that excludes contraception and abortion. Whether Plaintiffs' claimed injury would be redressed by a favorable decision in this matter "depends on the unfettered choices made by independent actors not before the court[] and whose exercise of broad and legitimate discretion the court[] cannot . . . control or . . . predict." Lujan, 504 U.S. at 562 (internal quotations omitted).  The State and MCHCP are not parties to this lawsuit, and, therefore, there is no reason they would be obligated to honor any "incidental legal determination the suit produce[d]." Id. at 569-70.

In support of their argument that a favorable decision in this matter would provide them redress, Plaintiffs rely on matters in which the Eighth Circuit enjoined enforcement of the penalty provisions of the Act applicable to the Mandate.  Standing in the cases cited by Plaintiffs was not issue - the plaintiffs in those matters were employers who themselves were required to provide

9

contraception coverage in the health plans they offered their employees - and, therefore the cases are distinguishable from the matter under consideration.  See Annex Med. Inc. v. Sebelius, 2013 WL 1276025 (8th Cir. 2013) (unpublished); O'Brien v. U.S. Dep't of Health and Human Servs., 2012 WL 4481208 (E.D. Mo. Sept. 28, 2012) (unpublished).[3]  In conclusion, viewing the facts in a light most favorable to Plaintiffs, the Court finds, therefore, that Plaintiffs have failed to allege facts, which if true, would establish the that a favorable judgment in this matter would provide them with redress.  See Lujan, 504 U.S. at 560; Tarsney, 225 F.3d at 934.

Plaintiffs suggest that this matter falls "neatly" within the exceptions to the standing requirement articulated in National Wrestling, 366 F.3d at 940.  Specifically, Plaintiffs argue that they have standing, despite there being no direct causal relationship between the Mandate and themselves, because the governmental action that authorizes the State and MCHCP's conduct would otherwise be illegal in the absence of the governmental action.  In this regard, Plaintiffs argue that the Mandate is contrary to Mo. Rev. Stat. § 191.724.2 (no person "shall be compelled to obtain coverage for, or be discriminated against or penalized for declining or refusing coverage for, abortion, contraception, or sterilization in a health plan if such items or procedures are contrary to the religious beliefs or moral convictions of such employee or person"), and, thus "the federal government has authorized otherwise illegal activity."  (ECF Nos. 28 at 8; 35 at 2-3).  As argued by Defendants, absent the Mandate, the conduct of which Plaintiffs complain would not be illegal under Mo. Rev. Stat. § 191.724.2 because that statute does not prohibit employers or insurers from choosing to offer only a health plan that covers contraception.  (ECF Nos. 31 at 4-5).  Even assuming Plaintiffs' assertion regarding Mo. Rev. Stat. § 191.724.2 was correct, as discussed above, they have

---

[3]The Eighth's Circuit's Order in O'Brien is not reported or published, but the Eighth Circuit discussed its Order in Annex Medical, 2013 WL 1276025.

failed to assert facts which would leave little doubt as to the likelihood of redress and/or causation, as required for the exceptions to apply.  See National Wrestling, 366 F.3d at 940 (noting standing appropriate where challenged conduct would have been illegal in absence of regulations where redress would be achieved because the intervening choices of third party was not "truly independent of government policy").  Thus, the Court finds the exceptions articulated in National Wrestling, 366 F.3d at 940, do not apply; Plaintiffs have not met their burden to establish standing, see Lujan, 504 U.S. at 560; and, therefore, Defendants' Motion to Dismiss should be granted.  Because Plaintiffs cannot succeed on the merits the Court further finds that Plaintiffs' Motion for Temporary Restraining Order should be denied.  See Winter, 555 U.S. at 22; Gelco, 811 F.2d at 418.  Given the Court's threshold determination that Plaintiffs do not have standing, the Court need not address Defendants' arguments regarding the merits of Plaintiffs' claims.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendants (ECF No. 22) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Motion for Temporary Restraining Order (ECF No. 2) filed by Plaintiffs is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs' Complaint (ECF No. 1) is **DISMISSED**, with prejudice.  A separate Order of Dismissal will issue contemporaneously with this Memorandum and Order.

Dated this 16th day of October, 2013.

/s/Jean C. Hamilton

UNITED STATES DISTRICT JUDGE

11