# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PAUL JOSEPH WIELAND, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:13-cv-01577-JCH |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HEALTH AND HUMAN SERVICES, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' renewed Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 53.) The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

In 2010, Congress passed the Patient Protection and Affordable Care Act ("ACA"), Pub.L. No. 111-148, 124 Stat. 119 (2010). The ACA and its implementing regulations require group health plans and health-insurance issuers offering health insurance coverage to provide essential minimum coverage, without cost-sharing requirements. *See* 26 U.S.C. § 4980H(a); 42 U.S.C. § 300gg-13. For women specifically, such minimum coverage includes coverage for all Food and Drug Administration approved contraceptive methods and sterilization procedures—the so-called "contraceptive mandate" (hereinafter, the "Mandate"). *See* 42 U.S.C. § 300gg-13(a)(4); 77 Fed. Reg. 8725, 8726 (Feb. 15, 2012). In general, an employer that offers employees a group health plan must comply with the Mandate. The ACA provides several exemptions, however, for employers with fewer than 50 employees, employers maintaining

1

"grandfathered" plans, and certain religious employers. *See* 26 U.S.C. § 4980H(c)(2); 42 U.S.C. § 18011; 45 C.F.R. §§ 147.131, 147.140. In addition, accommodations are available for certain non-exempt, nonprofit religious organizations. *See* 78 Fed. Reg. 39,870, 39,871 (July 2, 2013).

As life-long Roman Catholics, Plaintiffs Paul and Teresa Wieland, along with their three daughters, oppose the use, funding, provision, and support of contraceptives, sterilization, and abortifacients (collectively and hereinafter, "contraceptives"). Plaintiffs believe that paying for or participating in a healthcare plan that includes coverage for contraceptives violates their sincerely-held religious beliefs, as does providing such coverage to their daughters. Mr. Wieland serves as a State Representative in the Missouri General Assembly. As an employment benefit, he receives health insurance coverage through Missouri Consolidated Health Care Plan ("MCHCP"), an entity of the State. Plaintiffs pay a portion of the insurance premiums in order to maintain coverage for themselves and their daughters, and the State of Missouri contributes the remaining portion. Prior to August 1, 2013, and pursuant to state law, MCHCP offered Mr. Wieland an opportunity to opt out of coverage for contraceptives. Following the decision in *Missouri Insurance Coalition v. Huff*, 947 F. Supp. 2d 1014, 1020 (E.D. Mo. 2013) (finding certain portions of Mo Rev. Stat. § 376.1119, which required health insurers to offer plans that excluded coverage for contraceptives if such coverage was contrary to enrollee's religious beliefs, was preempted by ACA), MCHCP discontinued the opt-out offer, and the Wielands were placed in a healthcare plan that included coverage for contraceptives.

In August 2013, Plaintiffs filed suit against Defendants United States Department of Health and Human Services ("HHS"); Kathleen Sebelius, in her official capacity as the Secretary of HHS; United States Department of Treasury ("Treasury"); Jacob Lew, in his official capacity

as the Secretary of Treasury; United States Department of Labor ("Labor"); and Seth Harris, in his official capacity as Acting Secretary of Labor (collectively, "Defendants").[1] (Compl., ECF No. 1.) Plaintiffs allege that the Mandate forces them to either (1) violate their religious opposition to contraceptives by paying to make such services available to their daughters, (2) forfeit the benefit of employer-sponsored health insurance for themselves and their daughters and purchase more expensive coverage, or (3) forgo health insurance for themselves and their daughters altogether. Plaintiffs further allege that they cannot obtain insurance coverage other than through Mr. Wieland's employee plan without incurring significantly greater expense, that upon information and belief they cannot obtain any insurance plan that does not provide coverage for contraceptives, and that forgoing health insurance altogether violates their religious duty to provide for the health and well-being of their children. *Id.*

Plaintiffs assert that the Mandate and Defendants' enforcement of the Mandate against them violate their rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.* (Count 1); the Free Exercise and Free Speech Clauses of the First Amendment, and the Due Process Clause of the Fifth Amendment (Counts 2-4); and the Administrative Procedure Act, 5 U.S.C. § 706 ("APA") (Count 5). *Id.* ¶¶ 88-130. Plaintiffs seek declaratory and injunctive relief; specifically, they seek a Court "order prohibiting Defendants from enforcing the Mandate against [them] insofar as it forces them to provide, fund or participate in the provision of [contraceptives]." *Id.* ¶ 131.

In October 2013, this Court dismissed Plaintiffs' Complaint for lack of standing. (ECF Nos. 37, 38.) Upon remand from the Eighth Circuit, Defendants renew their request for dismissal pursuant to Rule 12(b)(6). (ECF No. 53.)

---

[1] Since the filing of this suit, Secretary of HHS Sylvia Burwell and Secretary of Labor Thomas Perez have been substituted for their predecessors.

**DISCUSSION**

In ruling on a motion to dismiss, the Court must construe the complaint liberally and in the light most favorable to the plaintiff. *See Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and a motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

**A.  RFRA Claim**

Congress enacted RFRA "in order to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760-61 (2014) (RFRA was enacted in response to *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872 (1990), in which Supreme Court held that neutral, generally applicable laws may be applied to religious practices even when not supported by compelling governmental interest). "[T]o ensure broad protection for religious liberty, RFRA provides that the 'Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability.'" *Id.* at 2761 (quoting 42 U.S.C. § 2000bb-1(a)). "If the Government substantially burdens a person's exercise of religion, under the Act that person is entitled to an exemption from the rule unless the

Government 'demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Id.* (quoting 42 U.S.C. § 2000bb-1(b).) The "exercise of religion" protected under RFRA "involves not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." *Id.* at 2770 (citation omitted). In addition, RFRA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and "mandate[s] that this concept be construed in favor of a broad protection of religious exercise." *Id.* at 2762 (citations omitted).

Here, the parties do not dispute the sincerity of Plaintiffs' beliefs, and thus the threshold question is whether plaintiffs have alleged sufficient facts to demonstrate that the Mandate substantially burdens their exercise of religion. Defendants argue that the Mandate does not substantially burden Plaintiffs' exercise of religion because it does not apply to Plaintiffs at all, in that it does not require them to provide coverage, unlike group health plans and health-insurance issuers. Defendants cite various cases from other Circuits in which organizations that were eligible for accommodations under the ACA brought suit challenging the requirement that they complete certain documentation in order to receive such accommodations. The eligible-organization plaintiffs argued that the accommodation process substantially burdened their sincerely-held religious beliefs because their required completion of the documentation indirectly facilitated the delivery of the objectionable coverage, and in effect their only option was to not comply with the ACA and to incur significant financial penalties. The courts rejected the plaintiffs' challenges to the accommodation process, reasoning that the resulting obligation to provide contraceptive coverage fell on the health-insurance issuers and third-party administrators, not on the eligible organizations opting out. Relying on these cases

5

(many of which have since been appealed and are now pending review before the Supreme Court), Defendants assert that "courts have made clear in cases challenging the accommodations for eligible organizations that '[a]n asserted burden is … not an actionable substantial burden when it falls on a third party, not on the religious adherent.'" (ECF No. 53.1 at 15-17 (quoting *Priests for Life v. U.S. Dep't of Health & Human Servs.*, 772 F.3d 229, 246 (D.C. Cir. 2014), *cert. granted*, 84 U.S.L.W. 3257 (U.S. Nov. 6, 2015) (No. 14-1453)).) Defendants urge this Court to adopt similar reasoning here.

As Plaintiffs note, however, the Eighth Circuit reached a different conclusion in *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, 801 F.3d 927, 945-46 (8th Cir. 2015), *petition for cert. filed*, (U.S. Dec. 15, 2015) (No. 15-775). In *Sharpe Holdings*, the Court concluded that the accommodation process imposed a substantial burden on the eligible-organization plaintiffs because, in the event the plaintiffs adhered to their religious beliefs and refused to comply with the Mandate or accommodation regulations, they faced significant monetary penalties. The Court found that the plaintiffs' burden "mirrored the substantial burden recognized by the Supreme Court in *Hobby Lobby*," and that in view of the plaintiffs' sincerely-held religious beliefs, "compelling their participation in the accommodation process by threat of severe monetary penalty was a substantial burden on their exercise of religion." *Id.* at 937-42. In distinguishing the line of cases that Defendants rely upon here, the Eighth Circuit emphasized that it is not the Court's role "to second-guess [a plaintiff's] honest assessment of a 'difficult and important question of religion and moral philosophy, namely, the circumstances under which it is wrong for a person to perform an act that is innocent in itself but that has the effect of enabling or facilitating the commission of an immoral act by another.'" *Id.* at 941 (quoting *Hobby Lobby*, 134 S. Ct. at 2778).

6

At least one other district court has addressed a similar challenge to the Mandate by employee plaintiffs, and held that the plaintiffs had demonstrated a substantial burden on their exercise of religion. In *March for Life v. Burwell*, No. 14-cv-1149 (RJL), 2015 WL 5139099, at *7-11 (D.D.C. Aug. 31, 2015), *appeal docketed*, No. 15-5301 (D.C. Cir. Oct. 30, 2015), the District Court concluded that "[e]ven though employee plaintiffs are not the direct objects of the Mandate, they are very much burdened by it," and that the defendants' arguments that the plaintiffs' participation in a plan covering contraceptives was "'not a burden' at all" was, in essence, "a thinly veiled attack on [the plaintiffs'] beliefs." *Id.* at *7. The Court found that the plaintiffs were "caught between the proverbial rock and hard place: they can either buy into and participate in a health insurance plan that includes the coverage they find objectionable and thereby violate their religious beliefs, or they can forgo health insurance altogether and thereby subject themselves to penalties for violating the ACA's individual mandate, codified at 26 U.S.C. § 5000A." *Id.* at *8.

In view of the Eighth Circuit's decision in *Sharpe Holdings* and its admonishment therein that it is not the Court's role to second-guess the reasonableness of a plaintiff's sincerely-held religious beliefs, this Court finds the reasoning in *March for Life* highly persuasive. Similar to the plaintiffs in *March for Life*, Plaintiffs here claim that they cannot maintain health insurance consistent with their religious beliefs. Plaintiffs allege that they cannot obtain any insurance plan that does not provide coverage for contraceptives, and that forgoing health insurance altogether violates their religious duty to provide for the health and well-being of their children. Based upon these allegations, the Court concludes that a reasonable inference can be drawn that the Mandate coerces Plaintiffs into violating their sincerely-held religious beliefs. *See Sharpe Holdings*, 801 F.3d at 937 ("governmental action substantially burdens the exercise of religion

7

when it coerces private individuals into violating their religious beliefs or penalizes them for those beliefs by denying them the rights, benefits, and privileges enjoyed by other citizens") (internal quotation and citation omitted).

Defendants further argue that the Court should nevertheless dismiss Plaintiffs' RFRA claim because they can establish that any burden on Plaintiffs' religious beliefs is supported by a compelling governmental interest for which it has used the least restrictive means to further. Ultimately, the evidence may very well demonstrate this. However, to state a plausible claim for relief, Plaintiffs need not disprove Defendants' assertions. Plaintiffs' allegations that the Defendants' enforcement of the Mandate imposes a substantial burden of their religious beliefs and that non-enforcement of the Mandate would provide them with relief are sufficient to avoid dismissal at this stage in the proceedings. *See Sharpe Holdings*, 801 F.3d at 937 (to state claim under RFRA, religious objector must show that government substantially burdened sincere exercise or belief; burden then shifts to government to come forward with evidence showing that it has compelling interest in applying challenged law to person, and that application of burden is least restrictive means of furthering compelling interest); *see also Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014) (matters outside pleading may not be considered in deciding Rule 12(b)(6) motion to dismiss); *cf. Howe v. Burwell*, No. 2:15-CV-6, 2015 WL 4479757, at *15 (D. Vt. July 21, 2015) (to survive motion to dismiss, employee plaintiff need only plausibly allege that defendants' enforcement of certain provisions of ACA imposed substantial burden on his religious beliefs and that non-enforcement of those same provisions would afford plaintiff some measure of relief).

Therefore, the Court finds that dismissal of Plaintiffs' RFRA claim is not warranted at this time.

## B. Free Exercise Claim

The Free Exercise Clause states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. Const. amend. I. Under the Free Exercise Clause, an individual's freedom of religious belief is absolute, but freedom of conduct is not. *See, e.g.*, *Bowen v. Roy*, 476 U.S. 693, 699 (1986). "In addressing the constitutional protection for free exercise of religion," Supreme Court caselaw establishes the general proposition that "a law that is neutral and of general applicability need not be justified by a compelling governmental interest, even if the law has the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). "Neutrality and general applicability are interrelated," and "failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Id.* The Court will first consider neutrality.

"[I]f the object of a law is to infringe upon or restrict practices because of religious motivation, the law is not neutral." *Lukumi*, 508 U.S. at 533 (quoting *Smith*, 494 U.S. at 878-79). Here, the Court finds that the Mandate does not have as its "object the suppression of religion." *Lukumi*, 508 U.S. at 533-540. The Mandate and its implementing regulations "were passed, not with the object of interfering with religious practices, but instead to improve women's access to healthcare and lessen the disparity between men's and women's healthcare costs." *O'Brien v. U.S. Dep't of Health & Human Servs.*, 894 F. Supp. 2d 1149, 1160-62 (E.D. Mo. 2012) (citations omitted), *rev'd and vacated in part on other grounds*, 766 F.3d 862 (8th Cir. 2014) (per curiam). The Court finds Plaintiffs' argument that the religious-employer exemption compromises the neutrality of the Mandate by categorically favoring religious employers over individual parishioners unavailing. On the contrary, "the religious-employer exemption presents a strong

argument in favor of neutrality, demonstrating that the 'object of the law' was not 'to infringe upon or restrict practices because of…religious motivation.'" *Id.* at 1161 (quoting *Lukumi*, 508 U.S. at 533). *Cf. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 335 (1987) ("[I]t is permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions."); *Catholic Charities of Diocese of Albany v. Serio*, 7 N.Y.3d 510, 522 (2006) (neutral purpose of New York health care law, which was to make contraceptive coverage broadly available to New York women, was not altered because Legislature chose to exempt some religious institutions and not others; "To hold that any religious exemption that is not all-inclusive renders a statute non-neutral would be to discourage the enactment of any such exemptions—and thus to restrict, rather than promote, freedom of religion."), *cert. denied.*, 552 U.S. 816 (2007). In view of the Mandate's purpose and operation, it is not evident that the Mandate "target[s]" Plaintiffs' religion. *Lukumi*, 508 U.S. at 542. Therefore, the Court concludes that the Mandate is neutral.

The Court further concludes that the Mandate is generally applicable. The Mandate does not "in a selective manner impose burdens only on conduct motivated by religious belief." *Id.* at 543. Rather, the Mandate applies to all employers not falling under an exemption or accommodation, regardless of those employers' personal religious inclinations. Contrary to Plaintiffs' assertions, the exemptions and accommodations also do not undermine the general applicability of the Mandate within the meaning of Free Exercise Clause jurisprudence because, as Defendants argue, such exemptions and accommodations do not disfavor religion, nor do they differentiate between religions. *See Id.* ("All laws are selective to some extent, but categories of selection are of paramount concern when a law has the incidental effect of burdening religious

practice."); *cf. Olsen v. Mukasey*, 541 F.3d 827, 832 (8th Cir. 2008) ("General applicability does not mean absolute universality. Exceptions do no negate that the [Controlled Substances Acts] are generally applicable.").

Based on the foregoing, the Court concludes that the Mandate is neutral and generally applicable and does not offend the First Amendment's Free Exercise Clause. Therefore, Plaintiffs' claim under the Free Exercise Clause will be dismissed for failure to state a claim.[2]

**C.   Due Process Claim**

Plaintiffs assert that the Mandate violates the Due Process Clause of the Fifth Amendment by interfering with their parental rights. The Due Process Clause "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). *See also King v. Olmsted Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) ("We have recognized a right to familial relations, which includes the liberty interest of parents in the custody, care, and management of their children.")

Plaintiffs assert that the Mandate coerces them into providing their daughters with free and ready access to contraceptives, despite their beliefs and teachings that contraceptives are gravely immoral. This "Government-coerced hypocrisy," they argue, "is a clear infringement upon and impediment to their ability to 'inculcate and pass down many of [their] most cherished values, moral and cultural.'" (ECF No. 58 at 32 (quoting *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 503-04 (1977).)

This Court disagrees. The Court fails to see how the Mandate—which does not require Plaintiffs to provide their daughters with or educate them in any particular manner regarding the

---

[2] Plaintiffs argue that their assertion of "hybrid rights" requires that the Mandate be subject to strict scrutiny even if it is neutral and generally applicable. Because the Court finds that Plaintiffs have also failed to state claims under the Due Process and Free Speech Clauses, the Court rejects their hybrid-rights theory.

11

use of contraceptives—prevents or restricts Plaintiffs from "direct[ing] the upbringing and education of [their] children under their control." *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-535 (1925). The Mandate requires neither Plaintiffs nor their daughters to avail themselves of the contraceptive coverage; rather, Plaintiffs and their daughters retain the choice to do so. *Cf. Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972) ("The impact of the compulsory-attendance law on respondents' practice of the Amish religion is not only severe, but inescapable, for the Wisconsin law affirmatively compels them, under threat of sanction, to perform acts undeniably at odds with fundamental tenets of their religious faith."); *Parker v. Hurley*, 514 F.3d 87, 100 (1st Cir. 2008) ("Exposure to [curriculum materials intended to encourage respect for gay persons and couples] in dispute here will not automatically and irreversibly prevent the parents from raising [their children] in the religious belief that gay marriage is immoral. [The plaintiffs] retain options, unlike the parents in *Yoder*."). Furthermore, Plaintiffs cite no caselaw, nor is the Court aware of any, that recognizes the particular parental right they assert in this matter—the right to have a health insurance plan that excludes coverage of services that a parent objects to for religious reasons. Therefore, Plaintiffs' due process claim will be dismissed.

**D.     Free Speech Claim**

Plaintiffs next assert that the Mandate violates their rights under the Free Speech Clause. The Free Speech Clause states that, "Congress shall make no law … abridging the freedom of speech…" U.S. Const. amend. I. The Supreme Court has long recognized that the First Amendment protects both freedom of speech and freedom from compelled speech. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess

by word or act their faith therein."). Free speech also encompasses the right to refuse financial support to causes with which one disagrees, and the government may not compel persons to express a message or subsidize a message with which they disagree. *See Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2288-89 (2012); *United States v. United Foods, Inc.*, 533 U.S. 405, 413-14 (2001).

Plaintiffs assert that the Mandate not only compels them "to subsidize things that [they] find morally objectionable, but it also compels [them] to subsidize others persons to educate and counsel people to engage in those morally objectionable activities." (ECF No. 58 at 33.) As an initial matter, the Mandate neither limits nor requires Plaintiffs or any "other persons" to say anything. Thus, the Court finds that the Mandate regulates conduct, not speech, and that any unscripted speech arising from the education and counseling of other individuals regarding contraceptives is incidental.

Nevertheless, Plaintiffs further argue that, to the extent they are being compelled to fund conduct, such conduct is inherently expressive. However, in considering whether conduct is inherently expressive the Court must ask "whether an intent to convey a particularized message [i]s present, and whether the likelihood [i]s great that the message w[ill] be understood by those who view[] it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quotation and citation omitted). Here, the Court finds that the giving or receiving of health care—which at the discretion of individual doctors and patients may or may not involve education and counseling regarding contraceptives—is not inherently expressive conduct. It "is not a statement in the same sense as wearing a black armband…or burning an American flag." *O'Brien*, 894 F. Supp. 2d at 1166-67 (citations omitted). Plaintiffs' objection to subsidizing health insurance coverage that may result

in others engaging in contraceptive education and counseling is not one protected by the First Amendment. Therefore, Plaintiffs' Free Speech claim will be dismissed.

**E.      APA Claim**

Plaintiffs' final claim is that the Mandate violates the APA. Plaintiffs specifically allege that the Mandate violates a separate provision of the ACA which prohibits requiring any "'qualified health plan to provide coverage of [abortion] services.'"[3] (ECF No. 58 at 35 (quoting 42 U.S.C. § 18023(b)(1)(A)(i)).) The APA grants standing to persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. In addition to Article III standing, plaintiffs must also satisfy the requirements of prudential standing. As articulated by the Supreme Court, a plaintiff satisfies prudential standing if the plaintiff is "arguably within the zone of interests to be protected or regulated by the statute" that the plaintiff says was violated. *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970).

Plaintiffs here lack prudential standing to claim that the Mandate conflicts with the separate provision of the ACA. *See* 42 U.S.C. § 18023(b)(1)(A) (defining "qualified health

---

[3] In their Response to Defendants' Motion to Dismiss, Plaintiffs assert that they have also pled an arbitrary and capricious claim under the APA, and that the government has failed to dispute this claim. Plaintiffs' Complaint, however, does not explicitly allege that the Mandate is arbitrary or capricious, only that "Defendants, in promulgating the Mandate, failed to consider the constitutional and statutory implications of the Mandate on individuals like the Plaintiffs." (Compl. ¶ 129.) Even assuming Plaintiffs have alleged sufficient facts to assert an arbitrary and capricious claim under the APA, and that they maintain prudential standing to do so, the Court would nevertheless find that the Mandate is neither arbitrary nor capricious. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (arbitrary and capricious standard is narrow; generally, agency rule would be arbitrary and capricious if agency has relied on factors which Congress has not intended it to consider, entirely failed to consider important aspect of problem, offered explanation for its decision that runs counter to evidence before agency, or is so implausible that it could not be ascribed to difference in view of product of agency expertise); *see also O'Brien*, 894 F. Supp. 2d at 1168-69 (rejecting plaintiffs' claim that Mandate was arbitrary and capricious).

plan"); *Clarke v. Sec. Industry Ass'n*, 479 U.S. 388, 399-400 (1987) (in cases where plaintiff is not subject of contested regulatory action, zone of interests test denies right of review if plaintiff's interests are so marginally related to or inconsistent with purposes implicit in statute that it cannot reasonably be assumed that Congress intended to permit suit). Plaintiffs are not within the zone of interests protected under that separate provision, since it applies only to "qualified health plans" available through Exchanges, which until 2017 are only available to individuals and small employers, and which MCHCP is not. *See* 42 U.S.C. §§ 18021(a)(1)(A), 18031(b), 18032(f). Therefore, Plaintiffs' APA claim will be dismissed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 53) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Counts II, III, IV, and V of Plaintiffs' Complaint (ECF No. 1) are **DISMISSED with prejudice**.

Dated this 8th day of January, 2016.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE