UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| PAUL JOSEPH WIELAND, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:13-cv-01577-JCH |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Parties' cross Motions for Summary Judgment. (ECF Nos. 75, 78.) The Motions have been fully briefed and are ready for disposition.

## BACKGROUND

On August 14, 2013, Plaintiffs Paul and Teresa Wieland filed this action against Defendants challenging the so-called "contraceptive mandate" (hereinafter, the "Mandate") of the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119. The Mandate requires that group health plans and health insurance issuers provide minimum essential coverage to women, which includes coverage for all contraceptive methods and sterilization procedures approved by the Food and Drug Administration, without cost-sharing requirements. *See* 26 U.S.C. § 4980H(a); 42 U.S.C. § 300gg-13. The statutory background is set forth in more detail in the Court's January 8, 2016 Order. (ECF No. 66.)

As life-long Roman Catholics, Plaintiffs oppose the use, funding, and provision of contraceptives, sterilization, and abortifacients (collectively and hereinafter, "contraceptives"). Plaintiffs believe that paying for or participating in a healthcare plan that includes coverage for

1

contraceptives violates their sincerely-held religious beliefs, as does providing such coverage to their three dependent daughters. Mr. Wieland serves as a State Representative in the Missouri General Assembly. As an employment benefit, he receives health insurance coverage through Missouri Consolidated Health Care Plan ("MCHCP"), an entity of the State. Plaintiffs pay a portion of the insurance premiums in order to maintain coverage for themselves and their daughters, and the State of Missouri contributes the remaining portion. Prior to August 1, 2013, and pursuant to state law, MCHCP offered Mr. Wieland an opportunity to opt out of coverage for contraceptives. Following the decision in *Missouri Insurance Coalition v. Huff*, 947 F. Supp. 2d 1014, 1020 (E.D. Mo. 2013) (finding certain portions of Mo. Rev. Stat. § 376.1119, which required healthcare insurers to offer plans excluding coverage for contraceptives if such coverage was contrary to enrollee's religious beliefs, preempted by ACA), MCHCP discontinued the opt-out offer, and Plaintiffs were placed in a healthcare plan that includes coverage for contraceptives.

In their Complaint Plaintiffs assert several claims under various constitutional and statutory provisions, including the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.* They assert that the Mandate forces them to either violate their religious opposition to contraceptives by maintaining health insurance that includes contraceptive coverage, or forgo health insurance altogether "under the pain of penalties." Plaintiffs have supported the allegations in their Complaint with declarations. They seek a Court order enjoining the government from enforcing the Mandate against them insofar as is forces them to obtain health insurance that includes contraceptive coverage, and from requiring that their health insurance issuer provide them with a healthcare plan that includes contraceptive coverage.

On October 16, 2013, the Court dismissed Plaintiffs' Complaint for lack of standing. Upon remand from the Eighth Circuit, Defendants moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court denied Defendants' motion to dismiss as to Plaintiffs' RFRA claim, but granted the motion as to all other claims set forth in the Complaint. The Parties now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Where Parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law." *Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp. 3d 943, 947 (E.D. Mo. 2014). The substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing the absence of a genuine issue of material fact. *See id.* at 256. When a summary judgment motion is properly supported by evidence, the burden then shifts to the non-moving party who must set forth affirmative evidence showing that there is a genuine issue for trial. *See id.* at 256-57. In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences that may be drawn from the record. *See Hott v. Hennepin Cnty., Minn.*, 260 F.3d 901, 904-05 (8th Cir. 2001) (citations omitted).

**DISCUSSION**

The Parties dispute (1) whether Plaintiffs have presented sufficient evidence demonstrating redressability in order to establish standing at the summary judgment stage, and (2) whether Plaintiffs' RFRA claim succeeds on the merits. The Court will address these issues in turn.

**A. Standing**

To establish standing, a plaintiff must show (1) that he has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) that there is "a causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations and citations omitted). When "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else," redressability ordinarily "hinge[s] on the response of the regulated (or regulable) third party to the government action," and "it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such a manner as to…permit redressability of injury." *Id.* at 562. Plaintiffs must establish redressability "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 562.

Defendants assert that Plaintiffs have not met their burden of showing that their alleged injury is redressable, because they have not produced any evidence showing that the requested injunction would result in their ability to obtain a healthcare plan from MCHCP or any other provider that accords with their religious beliefs. They argue that, on the contrary, the undisputed evidence shows that it is merely speculative as to whether MCHCP would provide such coverage. Specifically, Defendants reference a February 2016 correspondence from

MCHCP, in which MCHCP's General Counsel responded to a joint inquiry from the Parties regarding whether MCHCP would provide Plaintiffs with a contraceptive-free healthcare plan if the Court were to enter the requested injunction. MCHCP explained that "[t]he laws which regulate group health plans are many and the [Board of Trustees], with the advice from its counsel, would need to study the implications of the laws, together with the injunction, in order to make an informed decision on the question of creating and promulgating rules for the administration of non-contraceptive plans that only one subscriber and his enrolled dependents may access." (ECF No. 75.2 at 12.) MCHCP concluded that "[a]t this time, it is impossible to predict the [Board of Trustee's] response to the injunction…" *Id.*

Plaintiffs respond that they are not required to provide a written commitment from MCHCP that it will in fact provide them with a contraceptive-free plan, in part because of MCHCP's statutory obligation to provide one. Plaintiffs point to Section 191.724 of the Missouri Revised Statutes, which was not addressed in *Huff*, and which provides the following:

> No governmental entity,…or entity acting in a governmental capacity shall discriminate against or penalize an employee,…employer, health plan provider, health plan sponsor,…or any other person or entity because of such employee's,…employer's, health plan provider's, health plan sponsor's,…or other person's or entity's unwillingness, based on religious beliefs or moral convictions, to obtain or provide coverage for, pay for, [or] participate in,…abortion, contraception or sterilization in a health plan.

Mo. Rev. Stat. § 191.724.4. Plaintiffs contend that, because MCHCP currently offers healthcare plans that include contraceptive coverage, subsection 4 would prohibit MCHCP from discriminating against them by refusing to offer them a contraceptive-free healthcare plan. They also argue that, even if Section 191.724 did not exist, the requested injunction would allow them to explore a previously non-existent market of private insurers, or, in the alternative, to avoid the

5

government's imposition of fines. They maintain that either of these alternatives would provide redress.

In its order remanding the matter, the Eighth Circuit discussed Plaintiffs' arguments pertaining to Section 191.724 and concluded that it was more than merely speculative that Plaintiffs' injury would be redressed if they were granted the injunctive relief they seek. The panel reasoned that "[w]ith the benefit of the requested injunction against HHS's enforcement of the Mandate against MCHCP, MCHCP would be assured that it could safely proceed under section 191.724 to provide [Plaintiffs] with an opportunity to opt out of coverage for contraceptives." *Wieland v. U.S. Dep't Health & Human Servs.*, 793 F.3d 949, 957 (8th Cir. 2015).

Given the perceived effects Section 191.724 will have in the event the injunction is issued, this Court finds that the Plaintiffs have met their burden of showing that it is likely that their injury will be redressed by a favorable decision. With the benefit of the injunction, Plaintiffs would at the very least be able to pursue legal recourse under Section 191.724 in an effort to obtain a healthcare plan from MCHCP that does not include contraceptive coverage. "[T]he practical consequence" of this "would amount to a significant increase in the likelihood that [they] would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002) (State of Utah had standing to challenge census counting method that allegedly caused it to lose Congressional Seat, even though favorable ruling on merits would only result in change in legal status and would not immediately cause reassignment of Congressional Seat); *cf. Real Alternatives, Inc. v. Burwell*, 2015 WL 8481987, at *8 (M.D. Pa. Dec. 10, 2015) ("Plaintiffs here argue that, as in *Utah*, an injunction preventing the government from enforcing the [Mandate] against Real Alternatives' insurance provider would result in a

change of legal status. That change would, according to Plaintiffs, greatly increase the chance that the provider would supply insurance of the sort that complies with Plaintiffs' beliefs."). In addition, "[b]efore the threatened enforcement of the Mandate, the State and MCHCP were willing to offer [Plaintiffs] a contraceptive-free healthcare plan, which is persuasive evidence that they would do so again if [Plaintiffs] obtain their requested relief." *Wieland*, 793 F.3d at 957; c*f. Real Alternatives*, 2015 WL 8481987, at *8 ("given that the provider was willing to provide the sort of insurance Plaintiffs desired before the Contraceptive Mandate was enforced, we find Plaintiffs' evidence persuasive"). Therefore, the Court concludes that Plaintiffs have established standing.

The Court acknowledges Plaintiffs' argument that that the holding in *Huff* should be modified in light of the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760-61 (2014) ("The contraceptive mandate, as applied to closely held corporations, violates RFRA"). However, *Huff* dealt with the legal issue of federal pre-emption under the Supremacy Clause, which required the Court to consider the conflict that existed between the Mandate and Missouri law; the enforceability of the Mandate was not at issue. Here, as in *Hobby Lobby*, the issue before the Court is whether or not the Mandate violates RFRA, which implicates whether or not the Mandate should be enforced as to Plaintiffs. Therefore, the Court finds *Huff* distinguishable. In any event, the Court has already found that Plaintiffs have standing.

## B. RFRA Claim

Congress enacted RFRA "in order to provide very broad protection for religious liberty." *Hobby Lobby*, 134 S. Ct. at 2760 (RFRA was enacted in response to *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872 (1990)). "[T]o ensure broad protection for religious liberty,

7

RFRA provides that [the] 'Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability.'" *Id.* at 2761 (quoting § 2000bb-1(a)). "If the Government substantially burdens a person's exercise of religion, under the Act that person is entitled to an exemption from the rule unless the Government 'demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Id.* (quoting 42 U.S.C. § 2000bb-1(b)). The "exercise of religion" protected under RFRA "involves not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." *Id.* at 2770 (quotations and citation omitted). In addition, RFRA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and "mandate[s] that this concept be construed in favor of a broad protection of religious exercise." *Id.* at 2762 (quotations and citations omitted).

"The threshold question, thus, is whether [Plaintiffs] have demonstrated that the Mandate substantially burdens their sincere exercise of religion." *March for Life v. Burwell*, 128 F. Supp. 3d 116, 128 (D.C.C. 2015) (citation omitted). Defendants argue that the Mandate does not create a substantial burden because it does not apply to plaintiffs at all, but instead applies to group health plans and health insurance issuers. However, under RFRA a substantial burden upon religion exists when the government "conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717-18 (1981). Here, the Mandate, albeit indirectly and in conjunction with the individual mandate, does just

that: the ultimate impact is that Plaintiffs must either maintain a health insurance plan that includes contraceptive coverage, in violation of their sincerely-held religious beliefs, or they can forgo healthcare altogether, which will result in the imposition of significant penalties (not to mention the potentially crippling costs of uninsured health care). As the court in *March for Life* explained:

> [H]ealth insurance does not exist independently of the people who purchase it. Indeed, we commonly refer to such purchases as health plan 'participants.' A participant pays premiums into a plan in exchange for coverage for his or her future health needs. Given the nature of health insurance, employee plaintiffs *do* play a role in the health care plans that provide contraceptive coverage…Even though employee plaintiffs are not the direct objects of the Mandate, they are thus very much burdened by it.

*March for Life*, 128 F. Supp. at 129 (emphasis original) (citation omitted). Furthermore, in rejecting the government's argument that Plaintiffs lack standing because they challenge provisions of the ACA that do not apply to them, the Eighth Circuit recognized that "it is the Mandate that caused the State and MCHCP to eliminate contraceptive-free healthcare plans, to place [Plaintiffs] in a healthcare plan that included this coverage, and thus to cause injury to [Plaintiffs]." *Wieland*, 793 F.3d at 955. Therefore, this Court similarly rejects Defendants' argument that because Plaintiffs are not the direct objects of the Mandate they cannot demonstrate that they are substantially burdened by it.

Defendants further argue that "[i]t is not a substantial burden on a person's religion to subscribe to a group health plan that covers services that the person will not use for religious reasons, or that other individuals covered by the plan will elect, in the exercise of their personal choice, to utilize." Plaintiffs contend that Defendants' argument is, in essence, an attack on the sincerity of their religious beliefs, which the Supreme Court most recently in *Hobby Lobby* cautioned against. This Court agrees. Defendants' argument is, in effect, an argument that

9

Plaintiffs' religious beliefs are unreasonable. However, the sincerity of Plaintiffs' religious beliefs has not been disputed, and it is not for the Court "to say that [Plaintiffs'] religious beliefs are mistaken or insubstantial." *Hobby Lobby*, 134 S. Ct. at 2779 (explaining that Court's "narrow function…in this context is to determine whether the line drawn reflects an honest conviction…"); *see also United States v. Ali*, 682 F.3d 705, 710 (8th Cir. 2012) ("the orthodoxy and sophistication" of individual's sincerely-held religious beliefs "are irrelevant in the RFRA context").

Defendants urge the Court to follow the court's ruling in *Real Alternatives*. The court in *Real Alternatives* found that the Mandate did not impose a substantial burden upon the employee plaintiffs, reasoning as follows:

> [T]he Contraceptive Mandate simply does not cause Plaintiffs to modify their behavior in violation of their beliefs—arguably they have not modified any behavior at all. They would still have maintained insurance coverage, albeit of a different and more limited nature, regardless of the Contraceptive Mandate. Thus, they would always have taken the same steps to maintain coverage that the government requires them to take now, and their behavior has not been modified. Rather, it is the behavior of a third party, the insurer that the government modifies by requiring the insurer to provide additional services to Plaintiff.

2015 WL 8481987, at *23.

This Court disagrees that the Mandate does not cause Plaintiffs to modify their behavior at all. The Mandate, in its current form, requires Plaintiffs to now maintain—whether through MCHCP or another provider—a health insurance plan that includes contraceptive coverage. The only way Plaintiffs can comply with their religious conscience is by dropping their insurance altogether, which would result in them foregoing a valuable job benefit; in the assessment of thousands of dollars per year in fines pursuant to the individual mandate, codified at 26 U.S.C. § 5000A; and in leaving their daughters without health insurance. Whether Plaintiffs maintain or drop their insurance, they must modify their behavior and may not maintain health insurance

consistent with their religious beliefs. According to Plaintiffs, the implications of noncompliance place "material pressure" on them to keep the insurance that violates their faith. *See Wieland*, 793 F.3d at 955 ("The undeniable effect of the Mandate upon [Plaintiffs] is that their healthcare plan must now include coverage for contraceptives."); *see also March for Life*, 128 F. Supp. 3d at 131-32 ("The Mandate burdens employee plaintiffs' religious exercise by restricting the form in which those third parties can offer something that plaintiffs, for all intents and purposes, *must* buy."). This is not a case of a government program with "incidental effects…which may make it more difficult to practice certain religions," but rather one which has a "tendency to coerce individuals into acting contrary to their religious beliefs." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988). Therefore, the Court concludes that the Mandate imposes a substantial burden on Plaintiffs' exercise of religion.

The question remains, however, whether the government has established a compelling interest for which it has used the least restrictive means to further. *See* 42 U.S.C. § 2000bb-1(b); *Hobby Lobby*, 134 S. Ct. at 2779; *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006) (government must demonstrate compelling interest test is satisfied through application of challenged law to particular claimant whose sincere exercise of religion is being substantially burdened). The government asserts that "Congress enacted the preventive services coverage provision to increase access to and utilization of recommended preventative services," and that the government "undoubtedly has a compelling interest in having a workable insurance system that covers a wide range of preventative health services." (ECF No. 75.1 at 7-8.) This Court will assume for all intents and purposes that the government has a compelling interest in having such a workable insurance system that covers a wide range of preventative health services. *Cf. Hobby Lobby*, 134 S. Ct. at 2780 ("We find it unnecessary to adjudicate this

issue. We will assume that the interest in guaranteeing cost-free access to the four challenged contraceptive methods is compelling within the meaning of RFRA…"). Nevertheless, the Court finds that the government has not met its burden of showing that "it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by [Plaintiffs]." *Id.*

"The least-restrictive-means standard is exceptionally demanding." *Id.* (citation omitted). A regulation may constitute the least restrictive means of furthering the government's compelling interest if "no alternative forms of regulation" would accomplish that interest without infringing on the claimant's religious-exercise rights. *Sherbert v. Verner*, 374 U.S. 398, 407 (1963). "[I]f there are other, reasonable ways to achieve [the compelling interest] with a lesser burden on…protected activity, [the government] may not choose the way of greater interference." *Dunn v. Blumstein*, 405 U.S. 330, 343 (1972). Thus, "[t]he inquiry at this stage focuses on the context of the religious objectors, and considers[s] whether and how the government's compelling interest is harmed by granting specific exemptions to particular religious claimants." *March for Life*, 128 F. Supp. 3d at 131.

Defendants contend that "[i]nsurance markets could not function—either administratively or financially—if insurers had to tailor each health plan to the specific needs and desires of each individual plan participant and beneficiary." They argue that, just as there would be "no viable RFRA challenge if Congress had adopted a single-payer system in which the government provided health coverage including preventative services to all Americans," the fact that "Congress chose to accomplish the same goal through the less-intrusive means of regulating the existing system of private health insurance provides no sound basis for reaching a different conclusion."

However, this Court finds that there is a critical difference between the ACA and the various other government programs identified by Defendants, such as Medicaid and Social Security. Here, the government does not provide the insurance at issue, and Plaintiffs are not requesting the Court to force their insurer to do anything. Ultimately, in the wake of the requested injunction, it would be left to the discretion of the third-party insurance providers to determine whether or not to offer contraceptive-free plans. As the court in *March for Life* recognized:

> Insurance companies have every incentive to maintain a sustainable and functioning market, and the government's interest in the same would not be undermined by simply making it legal for a third-party provider to offer, without penalty, a plan consistent with plaintiffs' religious beliefs. If, as defendants suggest, offering an insurance plan that does not include a service or services to which a potential purchaser objects on religious grounds would be 'an impossible administrative undertaking,' insurance companies will not do it. One particular religious accommodation may make actuarial sense, while another may not. A company may even choose not to entertain possible changes as a matter of policy if it deems the cost of analysis too high. Those decisions can, and should be, left to private actors.

*March for Life*, 128 F. Supp. 3d at 132. Plaintiffs propose that the government could allow a system like that in place in Missouri before the Mandate, where individuals could simply check a box to opt out of contraceptive coverage. The Court agrees that this less restrictive alternative would equally further the government's interest.

In view of the foregoing, the Court concludes that the Mandate violates RFRA. Plaintiffs' request for injunctive relief will therefore be granted. The Court notes that its ruling today has no effect on MCHCP's or any other health insurance issuer's obligation under the Mandate to provide contraceptive coverage without cost sharing to those who do want it.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 75) is **DENIED**.

**IT IS FURTHER ORDERD** that Plaintiffs' Motion for Summary Judgment (ECF No. 78) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants are hereby permanently **ENJOINED** from enforcing against Plaintiffs and their health insurance issuer the statutes and regulations requiring a health insurance issuer to provide them with health insurance that includes contraceptive coverage. A separate Order will accompany this Memorandum and Order.

Dated this 21st day of July, 2016.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE